We call, of course, Calderon Rosas versus August, and let's have Councilor Petitioner, please. I have spoken to the clerk and reserved three minutes for this at all. Oh, we're going to have a problem unless you speak up. Fill the room with that wonderful voice. Now, what did you say? You wanted to reserve three minutes? I did speak to the clerk and reserved three minutes. Three minutes, yeah. The clerk is very nice, but we'll grant your request for three minutes. Oh, I'm sorry. I have to speak up. It's all good. I apologize for my— No, no, no. It's all good. It's all good. Go, go, go. It's my fifth language, English, so frankly, I don't speak perfectly any of those that I speak by this time, but anyhow. In the matter of Sergio Calderon Rosas, this is Petrofis for the petitioner in this case. May it please the Court. We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are right, liberty, and the pursuit of happiness. But to secure these rights, governments are instituted among men. United States— We're all going to stop and cry in a second because we all believe in those words. We do. Wonderfully. We do. And you know what? I'm going to give you 30 more seconds because— Thank you. Well, it is moving, though, that this is Philadelphia. This is not Nebraska or Michigan. This is Philadelphia, and this is 243 years later. We're standing here arguing over due process rights of aliens in this question. Fabulous. But we've got questions. Okay. Okay? So let's get to one of those questions. Well, for us, it's always a threshold question whether we have jurisdiction to hear this case. Right. And here, you and the government seem to agree that we should look to the Seventh Circuit. But the Seventh Circuit's approach is one that seems to be—well, the circuits are certainly conflicting internally and between each other as to different approaches to this. But the Seventh Circuit's approach seems to be rooted in either statutory or regulatory rights, not just an abstract due process under the Fifth Amendment. So which are you asking us to embrace here? And if it is the statutory or regulatory rights, where do we find that rooted when it comes to the privilege, not the right, to have counsel in these sorts of hearings? Well, both. I would ask this court to address both because due process violations stem from violations of federal regulations or federal statutes. In this case—and we're not talking about an imaginary interest in justice. We're talking about encoded rights to a fundamental affair hearing. 1229 is telling you that the aliens shall have a right to reasonably present this case before the immigration judge. They shall have a right to review meaningfully any decision by the IJ. But isn't that a different theory of due process? That is, that there is just a fundamental right to a fair hearing. That seems like a different approach that certainly some circuits have adopted than the Seventh Circuit's, which tells us to look for a statutory or regulatory anchor. And as a result of that, also concludes that prejudice is not something that we have jurisdiction to examine. Well, they're not—by looking at the statute, they're just saying, before we get to the Constitution, let's look at the statute. They're not depriving—taking away the Constitution and just saying, we will not even consider it. They're just putting it on the back burner, saying, let's first look at the statute and the regulatory scheme, and then we will see if we need to go to the Constitution. As to prejudice, is that a factual determination? The issue here is not—and it's on two levels, right? Abuse of discretion and prejudice, and what is the legal standard, and did the BIA apply the appropriate legal standards here? Because they're not even looking at reasonable probability. Let me ask you this. In terms of—let's assume, for the sake of our discussion, that we take a Fifth Amendment perspective on this, find that he has a right to due process, and that he had a right to counsel. What was the prejudice, and how do you demonstrate it on this record? Okay, so the prejudice was that the attorney filed deficient—prima facie deficient forms for relief. We have so many federal regulations for a reason, Your Honor. For example, the form must be signed. The instructions—the form will follow the immigration court, and most of everything we ask for is discretion. But when there are administrative procedures that have to be followed, there has to also be exhaustion, right? And four of your six administrative claims, if you will, were not exhausted, right? They were not brought before the BIA, and the other two have a problem, as I'm examining it, with prejudice. So tell me if you would—I think it piggybacks onto Judge Restrepo's question, right? So you have these regulatory and statutory problems that you say they're due process issues. Just because they're due process issues doesn't mean that you have—you shouldn't follow the administrative procedures set out. How do you get over, in the first instance, the exhaustion problem? Well, exhaustion is—this circuit has a very liberal approach to exhaustion. As far as we have a claim, or even who rank around the claim, speaking of deficient forms that I started with, the— I don't want you to. I want you to tell me how you get past exhaustion because those issues weren't brought to the BIA, right? But they were, is what I'm getting to. For example— They were? They were. Like, for example, the deficient filings. Prosecutor Perland, when he responded at that time, wrote to the BIA, a translator at jail, saying, I have never seen these filings. These filings—I brought this to the BIA's attention that they were not—they were deficient. They were in the section of ineffective counsel assistance granted, but the BIA had noticed the fact that the forms are not— You're talking about the new evidence that you claimed with regard to the extreme undue hardship, right? We're just talking about the administrative deficiencies that you've alluded to. How were those exhausted? I have—I think that the—I don't think I know that the appellant, the respondent, in his E-26 notice of appeal, wrote to the Board of Appeals that he had never seen any of his filings, for example. I also wrote to the BIA that these are deficient on their face. This was within the section of ineffective counsel assistance because the attorney who is now divorced, and it really doesn't matter whether he did not communicate, he had no clue about the case of this petitioner. He filed this document that this petitioner had not even knowledge of. He asked for voluntary departure without his knowledge or consent. I think it's— How did that prejudice him? He was prevented from reasonably presenting his case on it. I mean, that's why you hire a lawyer, because these people—I mean, I will find an attorney in an area that— you know, I've lived here for three years, and people that are foreign, they rely on their attorney. We have an extremely inefficient attorney who has failed once over and over to provide any assistance, not just this void. We don't even have—and the IJ who has by statute the duty to develop the record is accepting these deficient applications. Later on, 589 is deemed abundant. Are you asking us to adopt a presumption of prejudice from Leslie? Yes. Or are you making an argument that with certain information or forms correctly completed, that there's a reasonable probability that the outcome of the proceedings would be different? I think that this case is so—I'm sorry, this case is so egregious that it would fulfill both categories. Yes, Leslie tells us that there are certain fundamental rights, such as the right to an attorney, and when the pro bono list is not given from the get-go, there is no need to show prejudice, because that violation—that federal regulation was violated. And this applies here, too, because we have quite a few of them that I have compiled a list. Forget about the Immigration Court Manual that I sent out in the ding-dong, because that's another. I focused on the federal regulations and the statutes, and how many of them have been violated in this case. And so Leslie does open the door that the respondent is saying here he doesn't have any fundamental right whatsoever. But I think that it's unlimited discretion. In light of this discretion, I do not believe that in this country—this is not communist Eastern Europe before 1989, where the state had unlimited discretion to make all kinds of decisions. Leslie, by his terms, applies where there's a violation of a fundamental statutory or constitutional right. You're raising violations of the manual, of regulations. Are you looking to, like, a Ninth Circuit approach of a rebuttable presumption in that circumstance? Or do you need to make a showing of actual prejudice? I would not presume to look for—I mean, you have much more experience and knowledge. I'm not going to presume to guide you and impose on what I want Seventh Circuit or Ninth Circuit approach. Well, I'm interested in your views on that. I would go with—well, the Ninth Circuit is compelling. Yet it opens the door to further arguments. So it's probably safer to go with the Seventh Circuit that focuses on the statute, and the statute is clear here. Where the government is saying there is no interest, there is interest in fundamentally—in the right to present evidence, if you will. And that interest is statutory, is what I'm saying. So we don't have to go further if the court chooses not to expand it to a procedural due process right in discretionary relief proceedings, which are most of the proceedings in the immigration court. Let's go back to the notion of prejudice. On the interpreter issue, there's a certain part of the proceeding that goes on without the interpreter. In reading the papers from both sides, that portion of the transcript doesn't get into what I would say is the most important from your client's perspective. That is the testimony about—forget about the red light—the testimony about his family and about the problems his children are facing, et cetera. So part of one of your claims is the interpreter and the interpreter issue, let's call it, constitutes a constitutional violation. So one of the questions we're asking is, what's the prejudice? And my question to you is, if in essence all of the information that your client was hoping to get to the IJ was given in the testimony after the interpreter showed up, I understand that it was telephonically, what's the prejudice? Well, this is—you're right, John, this is like mid-hearing where I think it's prejudicial to push—it's prejudicial on the part of the IJ, it's prejudicial on the part of the attorney to agree to go for a hearing in English because it's more efficient. It's simply faster because when we have interpreters, it simply takes double time. So to save time, although efficiency is not fairness, they go with English. This person, he does not even understand that he later says, what is the purpose of the proceeding? He says, I think we're appealing my bond or something, and I don't understand. He says what, I'm so sorry? He believes that he's appealing his bond. This is on the same page where he says, I don't understand the whole of the words. So it's true that then they get an interpreter who is not sworn. We don't even know the name. Somebody wrote this entire code of regulations for a purpose, Your Honor. I mean, it says the interpreter shall be sworn. We need to know who is this individual. Is it competent? Prejudice would be—I said in my language, the sky is blue, and the interpreter said the sky is green. That would be problematic. That's not the argument that you make. Well, but we don't know who said what because we don't have—all we have is a transcript in English. We don't have—I've taken some of the audio records just to listen to them, and it's not even clear throughout the— because lamentably, immigration courts have very little resources, and the equipment is very outdated. So even the recordings are not— If your argument isn't my client said X, Y, Z, and the transcript reflects something entirely different, that would be an example of a showing of prejudice. The entire interpreter issue doesn't reflect what my client said. That's not your argument. So I'm asking you, in the absence of something like that, what's the prejudice? Well, there are many instances in the interpreted section of the transcript where it just stops. It's not even finished. We say what we wanted to say in the motion to remind you on it. He had a chance to write an affidavit, and his partner wrote an affidavit, and a lot of medical reports were submitted. That's different. That's right. That's very different than the interpreter issue. Okay, but back to what he could have said but didn't say through the interpreter. He said red, but the interpreter said blue. I have no knowledge if he said red or blue when we have a transcript by unsworn interpreter transcript that we don't know even if it's correct what is translated, interpreted. I'm saying that in itself the violation of a very established rule to have this interpreter sworn is related to the issue of the competency of the interpreter. And if the interpreter is not sworn, we cannot safely conclude, and it's all about safeguards for these people. It's not about giving them by rule something. There is no right in that. Your client has had the opportunity to review that transcript, and is there anything that you represent was not accurately communicated? What was not accurately communicated? The problems with his son, for example. There is a section where he says that he doesn't speak English nor Spanish, and I think he's referring to the youngest one because then we got the speech delay report, but in the transcript it seems to refer to the oldest boy because he has 13, 9, and 5. And I think the oldest one also had speech delay years ago, but then he's saying that was resolved. But then he's also talking that right now the child, but we don't know which child, either the older or the younger one, is having problems speaking in English or Spanish. Is that the interpreter's issue or the lawyer's issue? That the lawyer didn't present the case the way he should have presented it, and that the lawyer didn't present the evidence that he should have presented. That's very different than the interpreter issue, isn't it? It is different, Joanna. I agree with that, but I'm also saying when the interpreter is not identified, when we don't know if the interpreter is competent, in all the words we see on paper in English, we cannot safely conclude that this was not the interpreter's fault. Maybe the interpreter, I don't know. I wasn't there to make that claim. Maybe the interpreter was very competent. Most of them are that I have heard, but in this case we don't know who this person is. Maybe the interpreter was competent, but there were telephonic transmission difficulties. We have these issues, and then we have to restart the case. The petitioner in this case did speak some English, a good bit of English, and if he hadn't perceived the problem with the interpretation, he could have said something, and there's nothing on the record where he said, hey, this interpreter is not accurate. That is true, Your Honor, and I cannot speak for him why he didn't raise. Maybe because the interpretation was good. Maybe, but we cannot conclude safely that this is the case. I really don't know. You can't tell us that you don't know at this point, right? I don't know if the interpreter was competent. I mean, of course you can say that, but it does undermine the entire argument. Whether the interpreter was competent or incompetent, I truly don't want to blame somebody I don't know just based on transcript over a telephonic hearing, Your Honor. If you don't know, then we're left to either adopting or rejecting a presumption of prejudice, right? I am saying that the violation of this very established rule that the interpreter must be sworn in itself opens the door for judicial review because we're in the judicial jurisdiction, right? Okay. If we could go back to the jurisdictional issue, what do we make of the fact that the nature of the relief here, cancellation, is discretionary and we have an alternative ruling on the basis of discretion? A number of circuits have said if the nature of the relief is discretionary, then there's not a constitutionally protected property or liberty interest. And if the nature of the relief is discretionary as here, yes, there is no right to granting or denying that relief. That's why, as far as I understand, this court has no jurisdiction to review the weight of the evidence or the hardship factors, how they're all balanced and all that. Sorry, there's no jurisdiction to review what? The actual grant, the actual decision, the actual grant or denial of the benefit. And then going to the details, whether it was a correct or incorrect decision, right? But whether there was adequate, more than adequate, a fundamentally fair hearing is a different issue. For example, I recall the Goldsmith case with the BAA not wanting a lawyer to be admitted in the Supreme Court to say the BAA can exercise discretion, but it must exercise it in a fundamentally fair way. So, yes, they can exercise discretion. Of course, does the statute say so? It says it's discretionary. It says, though, that this court has jurisdiction over constitutional and legal questions like the statutory scheme. You need to grapple with the question that was posed, right? So in our circuit, there's a Hernandez case on the one side and Abdullah and Kuzam on the other. And there is some tension between the notion that in asylum cases, which are discretionary relief, there is some acknowledgement of a due process, right? Hernandez wasn't strictly a cancellation of removal, it was a suspension. And they were seeking to apply for cancellation of removal, but there's certainly an allusion to there not being due process, right? So that's the tension. Let's forget about the other circuits for motion. That's the tension in the Third Circuit. So can you walk us through that and how we should think about that? Well, Hernandez-Gonzalez deals with eligibility. So eligibility of a discretionary – so there are different sub-issues, right? We have the big umbrella of discretionary relief and what rights come from that discretionary relief. So there is no right to be eligible for that relief. For example, Hernandez-Gonzalez had criminal convictions, so he was prohibited by statute. So his issue with the court was that he should be entitled to be given the chance to apply, right? So he was never given a hearing that this court can evaluate whether it's fundamentally fair or unfair. It was stopped at the point of eligibility. So I think that Hernandez-Gonzalez does not deal – there is no case before to discuss. I would – I'm not – this is a different scenario here, Your Honor. We don't have, like, a pretermitted claim where we're saying that we have the right to be – and there were quite a few examples of the cases that you so kindly suggested for us to read, but, like, the right to apply for appeal, the right that you'd be notified of voluntary departure, would preempt some right to some discretionary relief. We're talking about eligibility in Hernandez-Gonzalez, but what I'm saying is that – and what I'm asking this court to reach as a conclusion is that once a hearing is given, it should be fundamentally fair. Well, and maybe I didn't explain myself well. Let me try again. When you look at these – Abdullah and Kazam on the one hand and Hernandez on the other, the question is does a due process right exist in this particular circumstance, right? So I thought what you were going to say is because Abdullah and Kazam acknowledged that it exists in the asylum context and that's an instance of discretionary relief, that because cancellation of removal is similarly discretionary relief, that whatever due process notion the Third Circuit has recognized in asylum, it should similarly recognize it in cancellation. The tension is Hernandez seems to conflict with that. And I'm asking you to walk us through how we deal with that tension. And you attempted to talk about one side of the tension but not the other. So what are you asking us to do? For instance, are you asking us to adopt Abdullah and Kazam and say that since cancellation of removal is similarly discretionary relief, as is asylum, that we should adopt that view? And if that is what you're saying, then how do you deal with Hernandez? Are you with me? Yes, yes. That is what I'm saying. Serrano-Alberto, and we have all the cases even before that, I believe. Serrano-Alberto is new, 2017. Throughout all cases of deportation proceedings, petitioner must be afforded due process of law, referring to Abdullahi. The nature of this right is one that focuses on the fairness of the process itself. This is from 2006. So I read all these cases and marvel, and I'm saying, this is a place that recognizes that these undesirables or desirables, whichever way the BIA decides, do have some rights to due process, do have some rights to fundamentally fair hearing. So Hernandez-Gonzalez, in which year was that? 2006 or 2009. It deals with different issues. I never read it to mean that there is no, in general, procedural due process. I read it to mean you don't have the right. And many district courts have said that, and many other district courts have said the same. Don't ask us to review the BIA decision itself. This is a discretionary grant, and the statute says no review. Well, here's what it says. Aliens who, this is on page 346. Aliens who seek only discretionary relief from deportation have no constitutional right to receive that relief, and it's an allusion earlier to liberty and property interests emanating from the due process clause. Well, I think if we look at the statute, it's just the plain text of the statute. No jurisdiction to review the grant of the judgment, right, the judgment itself. So it says they don't have rights to the relief. Yes, but that does not apply to the actual process of getting to that grant or not grant. They don't have the right to the relief in itself, and when they have criminal convictions like this petitioner in that case, they have, we have no power to tell now the BIA that must give them a hearing when they're already prohibited, and it's also illogical because if they're not eligible, they're not discussing that he's eligible because that's not a criminal conviction under the, they're saying I should have been given a hearing because there is due process, and I think what the court is saying is, well, yeah, maybe there is due process, but not here to give no right to the relief itself for us to go so far to order the BIA to give you a hearing. I may be wrong, Your Honor. What is the significance for the issues before us of the immigration judge here making the alternative holding as a matter of discretion that he would still deny relief? I'm sorry. The alternative? Well, there are two different bases on which the immigration judge denied cancellation of removal. One went to whether there was the extremely unusual hardship, which goes to an eligibility question, but in the alternative, the immigration judge also held that as a matter of his own discretion that he would deny that relief. Does that change the calculus or the nature of the issues before us? I would not say so, Your Honor. For them, the BIA actually did not even reach the issue of the discretionary grant. They say that they will not deal with it, right? If I understand the question, when the IJ denied because of lack of unusual extreme hardship and lack of worthiness, if you will, you know, positive balancing, then how would that affect the due process, right? I mean, he can. It's just that it has to be done fairly and squarely is what I'm asking this court to reach that conclusion. I'm not saying that the decision has to go one way or another way. I'm saying that the hearing itself needs to be fair. When the immigration judge was addressing the issue of discretion, he was looking at things like the nature of the offense, repeated violations of immigration law, coming back after voluntary departure, and recidivism. How would the information you're saying did not come in because of ineffective assistance? Let's assume that we conclude that there's a reasonable probability that would have made a difference on the nature of the hardship and that eligibility determination. But how does that factor into the IJ's consideration of the factors that he articulates leading to the discretionary determination? What difference would things like the children's health have made there? Well, there was no voluntary departure on it, but he kindly admitted to the court that he had entered sometime before he entered, so there was another entry. And yet there was a criminal accusation of DOIU and even possession of controlled substance, which was dismissed subsequently. It was the run of the employer, allegedly they found some drugs, so this case was dismissed by the state court. I think the disclosure is just the final order, right, which is the BAA and then the IJ's as long as the BAA implicates the IJ's order, but the BAA did not implicate, they just did not push the issue of the discretionary grant. That goes to the question of the right disposition here. Even if we held in your favor as to the ineffective assistance claim on the eligibility question, since the BAA expressly stated it was not addressing discretion, wouldn't we need to just remand to the BAA anyway? And this goes to the other question we asked you to be prepared to address as to PILJA versus SALIGA in the disposition here, even if we were to hold it in your favor. I understand, John. And I thought a lot about that. It's a very good question. Of course, it's in the interest of my client, I would argue that if the FADIGA standard, this court tells the BAA, reopen it and send it back to the IJ versus PILJA saying give it back to you, look at it again. I would go with FADIGA based on the facts rather than my interest because it's not right. Based on the facts in FADIGA, it's just very similar. PILJA had various claims, not just ineffective counsel assistance. They had a new CAF claim, new country conditions, new claims that the circuit court sent back for evaluation. In FADIGA, they had the same issues that we see here. There's different legal standards applied by the BAA to what is prima facie claim for the withholding of removal. You don't have one without, I mean, finding nexus when they cannot find nexus. This was never even heard before that 589 was abandoned. Or you have not shown prejudice on the 42B because it's more likely outcome would not be different. I think that the BAA had, frankly, we hope and pray that they can see this and just remind it so it can be reviewed by the immigration judge with all the data that is available. Some of it was newly available material evidence that we sent them. We would not want the stress and the work of more than 200 hours and the time of this court to come here and argue just, I'm saying the BAA had ample opportunity to see this evidence. They had ample opportunity to see the dismissal of the state's conviction, which was, I think, the strongest factor in the IJ's discretionary decision. And yet, instead of acknowledging it, they chose not to approach it. They said, we will not deal with it. I think that it would be duplicative to just send it back again and back. And I would ask the court to send it to the immigration judge for a new hearing. There's no evidence that the BAA acknowledged it and considered it. I mean, the dates of submission, et cetera, shows that the BAA must have had it. But the question is, in the first instance, shouldn't it go back to them for determination? And why should we essentially skip that step by saying we're going to grant the motion in the first instance and order them to send it back? Why should that happen? That's the question. Well, I'm probably not expressing it clearly, but what I'm saying is they already had a chance to look at it. They had the evidence. They had the dismissal and everything. They just chose not to look at it. So in denying it anyway, regardless of what was given to them, they have the duty to meaningfully review this case. They did not, by no means, I think. So I think it's just gobbling. Okay. Thank you so much. We'll hear from you on rebuttal. Let's hear from the government. Thank you. Good morning. May it please the Court. My name is Kristen Whitaker, and I'm here on behalf of the Attorney General of the United States. This Court should, in part, dismiss the petition for review and, in part, deny it. The Court should dismiss the petition for review, in part, because it lacks jurisdiction over the discretionary determination that the petitioner failed to establish the requisite hardship for cancellation of removal. Let me ask you this question that Judge Krause alluded to with your adversary, and I'd like you to sort of give it a full treatment, right? So as I understand it, one of the things you say in your papers is, follow Delgado. That'll take us to the light. And my question is this. Putting Delgado aside, how do you deal with the tension that I alluded to with your adversary? I'm really interested in hearing your views. Between Fernandez on the one hand and Abdullah Kazam on the other, because it would seem that Abdullah Kazam, in acknowledging due process rights in the asylum, acknowledges that those rights exist when there's discretionary relief at hand. And Fernandez, at least seemingly, is in a slightly different procedural posture than we have here, but seems to be in tension with that. Yes. So I think Fernandez has the right approach. I think the distinguishing factor is, although asylum is discretionary, when you apply for asylum, it's generally considered that you're applying for withholding of removal at the same time. And because withholding of removal is a mandatory form of relief, it's different than asylum. It's not discretionary. So that's where that distinction lies and why the court may consider that they can consider due process rights or et cetera for asylum, but not for cancellation of removal. So you're saying that you don't think that there is a meaningful – right. You're saying that it doesn't matter that both asylum and cancellation of removal are discretionary relief because in asylum you're essentially tagging it along with withholding, and that's the distinction that we should focus on? I think so in that circumstance. Obviously, with cancellation of removal, there's also the additional step that Congress has set it aside as something that is discretionary of which this court lacks jurisdiction to review. That's not applicable when it comes to asylum. But by regulation, when you apply for asylum, you are generally applying for withholding of removal at the same time. So I think that is the main distinction with that case, or at least that's the distinction the court can rely on. And you had started your remarks by saying we should follow Hernandez. Hernandez seems to focus on the liberty and property interest prerequisite. Can you talk a little about that? So for cancellation of removal, you cannot have a cognizable protected liberty interest or property interest in that form of relief. It's completely discretionary, and that's in line with Supreme Court cases. And it's discretionary. You don't have a protected liberty interest in the granting of the relief or in the means. I think that respectfully is what counsel was alluding to, saying that there is an interest in the process. But as the Supreme Court has held with the parole cases, that you don't have a liberty interest in the means as well. And that's why the petitioner cannot assert a constitutional due process claim in this case. What about the ineffective assistance of counsel claim? So ineffective assistance of counsel, you can't assert just a blanket claim or a freestanding claim with ineffective assistance of counsel because that's based on the Fifth Amendment. So if you view it through the lens of the Fifth Amendment, the due process clause of the Fifth Amendment, that doesn't put an individual in a position to make a claim that I'm entitled to counsel at these hearings, or the counsel did an abysmal job. My due process right to the effective assistance of counsel is compromised? You just can't rely completely on the due process clause. What the court needs to do and what I was attempting or responded with attention to say in supplemental briefing is that you need to tether it to the statute. And the statute still protects rights, the right to reasonably present your evidence. So if you look at the ineffective assistance of counsel claim, you can potentially argue, you know, I was not provided with a reasonable opportunity to present my evidence. And that's what the court should look at, if they find that they have jurisdiction to look at the cancellation of removal application in any event. So if we do conclude that when we have an IAC claim in front of us, we take the approach that the underlying right is more of the administrative one, like the Seventh Circuit has held, why don't we have there both the statutory and regulatory rights? Or are you conceding that we would, the government concedes we would reach that conclusion because the regulations provide for a meaningful opportunity to present your evidence, to cross-examine. At one point, they're ready to even talk about a right to counsel. So I think, first off, I want to make sure that the court is aware that I don't think the court has jurisdiction to review in this particular circumstance because the board found that there was no prejudice. So it goes to the ultimate discretionary determination. But if the court disagrees... The board found there was no prejudice, but there's no discussion in that opinion as to the documents were submitted in support of the IAC claim. And that's information that the IJ didn't have. So they didn't explicitly go into the documents, but they talked about the claims that were asserted in the motion to remand. They go through the petitioner's claims, and then they say that the petitioner has not... Well, it says, in this regard, the respondent has not established what additional corroboration he would have submitted. And, in fact, he had. No, I think that what the board is trying to say is that he has not established how that would have prejudged him. It's not ignoring the fact that the evidence... What additional corroboration he would have submitted that would have impacted the outcome of the case. Are you saying that that new evidence, number one, was considered, and, number two, even if the appropriate standard of reasonable likelihood had been applied, there'd be no difference in outcome? Yes. If the court is going into that determination, yes. If the court finds that it has jurisdiction to do so. Just going back to Judge Krause's question, I want to make sure I don't forget it. How could we reach that conclusion when the BIA itself says that it's not considering new evidence? So I think it's not considering new evidence on appeal, but it's considering the evidence for the motion to remand, which are separate. Where do you draw that? How do you read that into the opinion? I understand that the language is not exactly precise, but I think that where it says the respondent has not established what additional corroboration he would have submitted that would have impacted the case, I think the board is, again, signifying that it didn't establish how that evidence would have prejudiced, as well as down in the bottom paragraph where, again, it says established that this evidence would have impacted the outcome of the case. So you're saying that you want us to conclude that what has been identified by the parties as the new evidence is not substantively different than what had been presented to the IJ and what the BIA reviewed? And just one thing, because if that's what you're saying, then it seems like there's a sea change in the quantum and quality of the evidence that falls within the new evidence. And if the correct legal standard had been followed, the threshold, right, goes down. So if there's more evidence and the threshold goes down, how do we come to the same conclusion? Because what the board is indicating is that the immigration judge found that there was no hardship. Looking at factors such as that there are schools of lesser quality or medical resources of lesser quality, simply because they provide additional evidence of hardship, say, for the son's speech delay, that doesn't change the analysis that the schools remain the same. That son, there was no evidence of speech delay the first time, right? Correct. And the other son, the older son, the one whom there was evidence before the IJ, we have tons more evidence. And the daughter, there was no real evidence initially, and that also underwent a sea change. So what I'm not getting is how can you look at this with no exactitude from the BIA that they took it into account and come to the same conclusion when the appropriate standard, which, by the way, was not applied by the BIA, is a lower threshold? You do agree that reasonable likelihood in this instance is a lower threshold, yeah? I agree that – so I don't think, actually, that the board applied the wrong standard, if I may. So although the board said would have impacted the case, they said it's a matter of Calejo, but would likely change the result. So, again, although the language is imprecise, I still think that the would likely change is akin to the reasonable likelihood standard. They're not applying – But in here, they're not saying the would – by using the words would have impacted, they're not applying, for instance, in the case that the court brought our attention to, the more likely than not. They didn't apply that much higher standard. And it's different from the Ninth Circuit case, where the Ninth Circuit said there was an error for would have changed the outcome of the case. Here they said would have impacted the case, and then again, citing the Calejo. So I don't think that the standard is necessarily wrong. I think that the board was just using imprecise language, that it's not the cleanest decision, but I do believe that they did review the evidence. And I know that the court feels that there is additional evidence, a lot of additional evidence. But, again, it goes to the core of the hardship, you know, the eldest son having speech delays. It goes to the core of the hardship, and at the very beginning of this hearing, this trial, Judge Gannon makes it real clear, and I'm reading from his – he's telling these folks, I want you to focus on the hardship. So he makes it real clear that his decision is to be tethered to the hardship, and then maybe a third of the hardship is presented to him. I think that it's more than a third. You're saying in comparison – The children were hardly discussed. Yes, they were hardly discussed, but if you look at – The daughter I don't think was mentioned at all. But you also have to look at the evidence that was presented with the motion to remand. Respectfully, they were recent diagnoses of PTSD and depression. Understandably, that would occur, especially after what had happened to their father. The evidence that was presented at the time of the hearing, it's not significantly different. There is no – The lawyer didn't go about securing the evidence. I understand that. I still would argue that prejudice has not been established and that the board reviewed the evidence and still found that there was not a reasonable likelihood that the outcome of the case would have changed. Let's say that we accept that the board did consider that evidence. That would seem like if we conclude that we have jurisdiction to look at both deficiency and prejudice, as the Second Circuit has. It's not – since we're looking at an IAC claim, looking at prejudice doesn't take us to a discretionary determination of the underlying claim, but it's just the way you look at an IAC claim. If we conclude we have jurisdiction then and you're telling us that it's clear on the face of this opinion that the board took account of the new evidence in denying the motion to remand or reopen, then that would seem to say that the disposition would need to be that of SADCA. That is, we would need to be sending it back with directions to have it further sent back to the IJ for a new hearing. Right? I don't – I wouldn't agree with that. I still think that it should be sent back to the board. Again, because going into that ultimate conclusion is into an area that Congress has explicitly told the court it lacks jurisdiction to review. So it should still send it back to the board if it feels that the board did not review the evidence or applied the wrong standards and indicate that to the board so that the board can then relay that information confirming so. But again, if we – let's assume that we conclude we have jurisdiction to examine the IAC claim, and that includes looking at the prejudice problem. If we have that assumption in place and your position is that the BIA has already considered the new evidence as to prejudice, then why wouldn't it be a quintessential act of subrogation to be sending it back to the BIA to look again at the same evidence you're saying it already considered? I don't really have anything to say to that other than I still think that it should go back to the board, that I don't think that the immigration judge should reevaluate this claim and go through everything. All the evidence has been presented. If the court disagrees with the board's determination, the court can tell the board what it needs to do. Is it really the government's position that there is no right to a fundamentally fair hearing in immigration proceedings? It is not the government's position that there is not a – sorry, I see that my time has expired. It is not the government's position that there is no fundamental right. It's that simply the due process clause does not apply in this particular circumstance, but that the statute protects certain rights, including the right to reasonably present evidence, which does not conflict with a fundamental right to a fair hearing or trial. Is there a fundamental right to a fair hearing outside of what is specifically provided in regulations and statutes? Outside of, not that I'm aware of, I think that it still should be tethered to the statute. And again, the Constitution doesn't apply. What's the difference in your mind between what you think arises statutorily and regulatory on the one hand and constitutionally on the other when it comes to what we've been referring to as procedural due process? In your analysis? In your analysis. In my analysis, the difference is that you have – there is no right to specific process. And so with the statute – Right to the fairness that Judge Kress just alluded to, though. There's no – It doesn't emanate from procedurally or regulatory? It doesn't emanate – the fundamental right for a fair hearing, that's from the due process clause, but a right is still protected under the statute. That right is still protected? A right, a right to some process, not necessarily full process that other rights are. But did you just tell us it's tethered to the due process clause? No, no. I'm saying that you should tether your analysis to the statute and the regulations, tethering it narrowly to whether they have the reasonable opportunity to present evidence. How do you have a reasonable opportunity to present evidence if you have ineffective assistance of counsel? It depends on the circumstances of the ineffective assistance of counsel claim. Say if they allege that counsel was ineffective for failing to file something that – Asylum claim? Well – Or withholding or cat? Well, in this case, it would – it's not prejudicial because he did not have a claim. He did not have a claim for asylum or withholding removal. It was based on general gang violence. So in particular circumstances, it might be an issue. But in this particular case, it is not. Would it be prejudicial if he didn't present evidence tethered to the hardships it would cause in two of his three children? I don't think that it is prejudicial in this circumstance because, again, the board considered it and found that it did not meet – it didn't show the cancellation of removal. That's what we talked about. So you read the opinion that the VA considered this evidence and rejected it? That is my reading of the board's decision, yes, that they considered the evidence. But, again, stepping back, the big picture, arguably this court lacks jurisdiction to review anything relating to the cancellation of removal application. So the reason it's the court is find some issues with it. First off, the court doesn't have jurisdiction because of the discretionary determination. Then also there is the prejudicial outcome determination. That's another. So under what scenario could we have jurisdiction? How egregious would the IAC claim have to be for us to have jurisdiction? Or we never have jurisdiction on an IAC claim? No, I think that obviously the court would be able to have jurisdiction in particular circumstances. Say, like, if the board came forward and said this was not an error. That is a determination that the court could come in and say that's wrong, that's a legal error, and have jurisdiction. If you acknowledge that we have jurisdiction to review that question, why isn't that the question before us? The BIA agreed with the position of the IJ as to prejudice. The government, in its briefs, I take it, conceded there was sufficient performance, right? There may have been issues, but, again, it doesn't establish prejudice. What does footnote 2 mean in your supplemental brief? It seems to acknowledge that there's some sort of due process violation possible. But that goes to the asylum and withholding application. That's different from the cancellation of removal application. Sorry if there is some confusion here, but if we're looking at the- Yeah, I'm trying to figure out what's the purpose of the footnote, since we know we're not dealing with asylum and withholding or removal. Because he's asserting an ineffective assistance of counsel claim when it came to his asylum and withholding application being abandoned. And so the court then can look and have jurisdiction over that aspect of the claim, if that makes sense, that they have to be separate. What's your answer to Judge Krauts' question? Because I thought her question was at the heart of the case, which is- and, actually, Judge Viscerepos as well. Is there any circumstance in which you would acknowledge that we have jurisdiction over this scenario? Because I thought your point was that, as a threshold matter, we never would. Arguably, yes. I would assert that the court doesn't have jurisdiction. But if the court disagrees and wants to follow the Seventh Circuit standpoint in Delgado, you can look at the statute and the regulations. You just simply cannot apply the Fifth Amendment, the due process clause. So it's just narrowing the review to the statute and the regulations. Many of which, by the way, allegations of error are not exhausted, and that's another jurisdictional bar before this court. What about reviewing the BIA's adherence to its own precedent that, quote, it's recognized in Lozada or in Monreal? It talked about a strong applicant having a qualified child with serious health issues or compelling special needs. So I think with matter of Lozada, again, the board even recognizes that that is in the Fifth Amendment, the due process clause. And so you could, again, arguably say that it is inapplicable, but you could also find jurisdiction over Lozada when it comes to procedural errors. Say where they failed to file the complaint or allege the actual errors to the council and say specifically what was wrong in that circumstance. But, again, if the court disagrees, if they find that the board has created a framework with matter of Lozada, it still thinks it's appropriate to follow the statute, not follow the due process clause. And so the court has to look at the reasonable opportunity to present evidence. Well, what if the immigration judge made the decision on cancellation based on the flip of a coin? Would there be jurisdiction for us to review an issue of fundamental fairness in the nature of the hearing? If they weren't able to reasonably present their evidence, yes. You would find jurisdiction in that circumstance if that's the way that the court wants to approach it. If there is a legal error, then, yes, the court can come in and have jurisdiction. But if it's just a discretionary determination and there is no legal error, then Congress has explicitly stated that this court lacks jurisdiction. Is the determination of IAC a legal analysis? The legal analysis, again, would go to whether the statute was violated. You can't have a colorable constitutional claim in this case. You just cannot go to the Fifth Amendment. You can't go to the due process clause. But if you want to find the legal, it is a legal analysis, but it's a question of law, again, you would go to Delgado's analysis and just looking at the statute. What is discretionary about compliance with the Fifth Amendment? The reason why the Fifth Amendment is not in place is because the Supreme Court has determined that the Fifth Amendment does not apply if there is not a cognizable liberty interest or property interest. And that is the case here where the applicant was applying for cancellation or removal, which is completely discretionary. That goes back to whether there is a right to a fundamentally fair hearing. I think, again, it goes to the statute and that the statute does not conflict with the right to a fundamental hearing. If the statute is confident with the Constitution, why wouldn't we say that just as the statute says, Constitution requires the same? Perhaps it is a matter of semantics, but because the Supreme Court has also held that the due process clause does not apply,  you could say that the statute is on the same level as the Constitution, but again, it is tailoring it to the statute and recognizing that there is no right to specific process and determining from there whether there had been prejudice if the court finds that it has jurisdiction. All of which is a legal analysis. It can be a question of law. The procedural safeguards. To affirm, we need to conclude that the right to a reasonable opportunity to present your evidence does not include the right to effective counsel. No, I don't think that you need to do that. I think that you can go into this determination and find that the board was correct, that prejudice was not established. You don't have to go into... That's a different issue, because then we're past jurisdiction. Yes. So I think that if the court is uncomfortable with this and they want to find jurisdiction, they want to assert jurisdiction, the way to do so, again, is that it is a question of law. And again, it's following the Delgado approach, looking at the statute and the regulations. But I think it is clear that you cannot apply the Due Process Clause, that you can't just have a blanket statement that your due process rights were violated. Well, maybe, as again, some circuits have opted not to reach it and looked at the question of what has been provided administratively, either through BIA precedent or the right to a reasonable opportunity to present evidence. If the government agrees that that right to present a reasonable opportunity and to present evidence includes effective counsel, then the government agrees we have jurisdiction on that basis, right? If the effective counsel prevents you from reasonably presenting your evidence, then yes, the court can step in and find that to be a question of law of which they have jurisdiction to review. But we'll pass jurisdiction then because if that's the nature of the claim raised, then we have to review the claim to determine one way or the other whether there was a reasonable opportunity to present evidence, right? And if the nature of it is an ineffective assistance claim, then we're looking at deficiency, which I was asking you before. I don't see the government anywhere contesting deficiency. And prejudice. And both of those are components of the ineffective assistance claim, which it sounds like the government now concedes is part of having a meaningful opportunity to present your evidence. Again, if counsel prevents you from reasonably presenting your evidence and the court finds that it has jurisdiction, then yes, it is something that they can evaluate. I'm sorry if I'm misunderstanding your question. Well, that addresses the jurisdictional hurdle. Say we do have jurisdiction to look at prejudice and whether the BIA erred in affirming the IJ as to prejudice. Why should we find that it did not given the extensive additional evidence that went to the conditions of the children, speech delay, special needs, PTSD, depression? Because I think that the additional evidence does not change the analysis. If the board was reasonable in determining that the outcome, there was not a reasonable likelihood that the outcome would have changed. Simply because there is additional evidence of, say, speech delay, that doesn't change the evidence that the schools in Mexico are maybe not at the same level as the United States or that the medical. It goes to the children's hardships. And the IJ was real clear this is what he was going to focus on. Yes. But I still think that it's just additional corroboration of the ultimate determination of hardship. It's not just corroboration. It's more evidence speaking to different children. It doesn't corroborate the eldest son's issues, does it? Well, because the immigration judge looked at things like speech delay with the eldest son and the access to schools and access to medical resources. It could potentially be. It's just additional corroboration of hardship. All right. Thank you so much. We appreciate it. Thank you. Thank you. Is that all? No, sir. Thank you. One example that respondents are citing, too, there is an issue, I guess, with this demand, which is really not a demand, a request. It's a request to have this court recognize the rights of the mentally fair hearing, regardless of the underlying benefit, including discretionary release proceedings. Well, I thought what she was saying was that take the Constitution off the table, because of the Supreme Court precedent that she alluded to, and that because, if you looked at it would give you the possibility for all the relief you seek, or at least for the issues that you've put on the table to be reviewed. Do you agree with that principle? No. You could set aside the constitutional component of your claim and still get to the administrative deficiencies and then get to the IAC and get to what the BIA did not take into account regarding the new evidence? Not here, Your Honor. And that's what I wanted to bring to the Court's attention. All these examples are irrelevant to us here. New Castle, what was it? Tenth Court appeal, rights to protection, restraining order situation, a rule that is not written in any statute, a rule that was not given by any court in Utah to endanger that new right that the Tenth Circuit found, that they do have these two process rights to protection. We have a right already written in the statute. All invoices, I forgot which states, in Washington or transfer from Hawaii, I think, to another state, unfettered discretion to transfer prisoners. With some sort of hearing, but no hearing was given. Again, there was no statute, not even a rule written. Then there was the Board of Regents for a 19-year professor, right? Adjunct professor, if you will, which I was for many years. So I have no right to go into the school because they don't want to rehire you. We're not asking the Court to invent a new right because of fundamental. But the Supreme Court has done so throughout history for good causes sometimes, right? And it makes me proud, you know, a lot of cases that have been handled because of fundamental rights. But this is not what we're asking the Court to kind of create a new right, speaking about the racial segregation cases, the, you know, women rights, also the personal liberty and personal autonomy cases. We're not asking. We're far away from this. What I'm simply saying is that the right to fundamentally fair hearing is in the statute. And from that right emanates your due process right to a fundamentally fair hearing, your right to present your case reasonably. In the Seventh Circuit that the respondent is so enamored with, they have said so, for example, in the 2016 case, Perry-Flint case, that when excluded evidence, for example, is central to petitioner's case in such a way that would change the outcome of the hearing, this Court must find that the petitioner did not have a meaningful opportunity to be heard, quoting Matthews v. Elkridge, which brings us to due process. I'm saying that the example that the respondent is giving to this Court about the difference between means and outcome are inopposite, because the example is about the rights that were not preexisting, that the appellants were asking the Courts to create those rights because of other fundamental rights under the substantive due process umbrella like this, which is not the case here. All right. All right. Thank you so much. Thank you. Thank you for the argument today, and we will take the matter under advisement, and we'll now adjourn. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. So this is recorded, right? Okay. Is it available immediately? Uh, not immediately. It's going to have to be submitted. And it usually is a few days or weeks? It should be, if not that day, by the next day. Okay. Great. Thank you. Thank you. Okay. Okay. Great. Thank you. Thank you. Great. Thank you.